## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 NOV 22 P 3: 44

U.S. DISTRICT COURT
DIS... ICT OF MASS.

| | |
|---|---|
| **MARIANNE J. FANTINI,** | Docket # _____ |
| **Plaintiff,** | |
| **v.** | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| **(1) SALEM STATE COLLEGE;** | |
| **(2) NANCY D. HARRINGTON** as | MAGISTRATE JUDGE _Sorokin_ |
| College President; and **(3) JANYCE** | |
| **J. NAPORA;** V.P. of Adm and Finance | |
| **(4) MATILDA DELVECCHIO** | |
| in her official capacity as | |
| Supervisor of Treasury Services; | |
| **(5) MASSACHUSETTS BOARD OF** | |
| **HIGHER EDUCATION'S OFFICE** | |
| **OF HUMAN RESOURCES** et. al. | |
| **(6) STEPHEN P. TOCCO**, in official | |
| capacity as Chairman of Board of | |
| Trustees of Mass. Bd. Higher Ed., | |
| **(7) PETER ALCOCK JR.** in his official | |
| capacity as State College Representative | |
| **Defendants,** | |

RECEIPT #
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. _OMB_
DATE 11-22-05

## **VERIFIED CIVIL RIGHTS COMPLAINT**

**I, Plaintiff, Marianne Fantini, hereby state the following under oath, under penalty of perjury pursuant to 28 U.S.C. § 1746;[1]**

### I.    **THE PARTIES**

1.    The Plaintiff, Ms. Marianne Fantini (hereinafter "Ms. Fantini" or

"Plaintiff"), is and at all times material hereto was, a citizen of the State of New

Hampshire and the United States of America residing at 40 Hookset Street

Seabrook, New Hampshire 03874.

---

[1] Plaintiff Fantini has simultaneously filed an Offer of Proof in Support of Judgment and Damages, which includes numeral Exhibits "1" through "18." Furthermore, at the conclusion of this Verified Complaint Exhibit "A" provides the Right-to-Sue-Letter dated October 12, 2005, while Exhibit "B" offers pertinent pages of a Memorandum of Fact and Law, and the Rebuttal Statement filed before the M.C.A.D. raising claims premised upon gender discrimination.

2.    The Massachusetts Board of Higher Education's Office of Human
Resources (hereinafter "Mass Board") coordinates the negotiation of all collective
bargaining contracts for the Defendant Salem State College.  The Board is an
appointed body politic organized under Massachusetts statute, M.G.L. c. 15A, § 1,
("defined as council in statute"); and is, at all times material hereto, a public
Agency of the State of Massachusetts with its principal place of business located at
One Ashburton Place, Room 1401, Boston, MA 02108.

3.    Defendant Stephen P. Tocco is the current Chairman of Mass Board of
Higher Education; and is, and at all times material hereto was, a citizen of the
Commonwealth of Massachusetts and the United States of America.

4.    Defendant Peter Alcock, Jr. is, and at all times material hereto was, a
citizen of the Commonwealth of Massachusetts and the United States of America;
employed as the State College Representative of the Defendant Massachusetts
Board of Higher Education, that oversees and manages Defendant Salem State's
internal affairs, and responsible for the implementation of grievance policies for
employees of Salem State.

5.    Defendant Salem State College (hereinafter "Salem College") is and at all
times material hereto was a public institution having its principal place of business
at 352 Lafayette Street Salem, Massachusetts 01970.

6.    Defendant Nancy D. Harrington is and at all times material hereto was the
President of the Defendant Salem State College, a public institution having its
principal place of business at 352 Lafayette Street Salem, Massachusetts 01970.

7.    Defendant Janyce J. Napora, is and all times material hereto the Vice President of Administration and Finance of the Defendant Salem State College, located at 352 Lafayette Street Salem, Massachusetts 01970.

8.    Defendant Matilda DelVecchio is and all times material hereto the Director of Treasury Services employed for the Defendant Salem State College, located at 352 Lafayette Street Salem, Massachusetts 01970. DelVecchio was at all times the Plaintiff's direct Supervisor.

### III.    JURISDICTION

9.    Jurisdiction over the subject matter of this case arises under 28 U.S.C. 1343(a)(4), under Act of Congress providing for the protection of civil rights, Title VII; 42 U.S.C. 2000(e), and 42 U.S.C. § 1981(b), and § 1983. Jurisdiction is further premised under and 28 U.S.C. § 1332, Diversity of Citizenship.

10.    The Plaintiff, Ms. Fantini, asserts that the amount in controversy exceeds the sum of Seventy-Five Thousand (\$ 75,000) Dollars exclusive of interest and costs, due to certain willful, tortious, and outrageous acts perpetrated by all the Defendants.

11.    This Court has supplemental jurisdiction over the Plaintiff's State law claims pursuant to 28 U.S.C. § 1367, applying Massachusetts common law within this federal Court, and maintains pendent jurisdiction to exercise any non-statutory jurisdiction over claims arising out of the same "nucleus of operative facts". See United Mine Workers, v. Gibbs, 383 U.S. 715 (1966).

12.    This Court has additional jurisdiction over all Massachusetts tort and contract causes of action that occurred beyond three years after Plaintiff was fired from her position as Accountant, under M.G.L. c. 260, § 7. Plaintiff was

3

*"incapacitated by reason of mental illness when a right to bring an action first accrues,"* therefore, *"the action may be commenced within the time hereinbefore limited after the disability is removed."* M.G.L. 260, § 7. See <u>Riley v. Presnell</u>, 565 N.E. 2d (Mass. 1991). Therefore any statute of limitations ought to be tolled by M.G.L. c. 260, § 7.

### IV.    <u>VENUE</u>

13.    Venue is proper *prima facie* in this district according to 28 U.S.C. 1391(b), ("in which the claim arose"), against the Defendant Mass. Board's Human Resource Office, and Defendant Salem College, an individually named Defendants.  All events occurred in Massachsuetts, thus 28 U.S.C. § 1391(b), is the controlling venue provision, and therefore suit is brought in Massachsuetts where both Defendants State entities and individual Defendants reside.

### V.    <u>STATEMENT OF FACTS</u>

14.    In late 1999, Fantini became employed at Defendant Salem College as a Temporary Employee for Robert Half International, and eventually was hired for a full-time working position as Director of Accounting.

15.    Defendant Salem College hired Fantini in April of 2000, to work in the Administration and Finance Department ("A&F") after applying for this position in November 1999.

16.    On Defendant DelVecchio's own recommendation, A&F Vice President Janyce J. Napora hired Fantini at the mid-range of the posted salary range on April 3, 2000.

17.     There exists an agreement known as the ("**Agreement Between The Board of Higher Education and The Association of Professional Administrators, MTA/NE**") hereinafter ("the agreement") that <u>offered the Plaintiff</u> Fantini, the full benefits and protections of the Association of Professional Administrators' as the "**exclusive bargaining agent for positions in the bargaining unit.**" A copy of pertinent language evidencing benefits of above mentioned agreement is annexed as <u>Exhibit 2.</u>"

18.     The Plaintiff in reliance upon the "definite" oral and written promises made by Defendant DelVecchio, and numerous "advertising brochures[2]" of (i) full-time employment position as an Accountant in a Supervisory role, and (ii) full protection of the Association of Professional Administrators; and (iii). promises of permanent employment from age 56 through retirement; (age 65), (iv), Promises of "**equal representation**" of "**all administrators**"; ended her employment relationship with Robert-Half International.[3]

At all times during her employment at Salem College, Fantini met or exceeded Salem's legitimate employee performance expectations.

---

[2] The First Circuit Court of Appeals has held; that so long as the promise is "definite and certain so that the promisor should reasonably foresee that it will induce reliance and reliance occurs, a party can maintain an action for breach." See <u>Santoni v. Fed. Deposit Ins. Corp.</u>, 677 F. 2d 174, 179 (1st Cir. 1982), see also <u>Rhode Island Hosp. Trust Nat'l Bank,</u> 419, Mass. at 848-850.

[3] Plaintiff Fantini seeks compensatory and punitive damages for her financial loss of other employment with former Temp Agency in reliance upon promises that Salem State College's $ 73,000 a year salaried position would surpass working as temp employee for Robert Half International. See <u>Redgrave v. Boston Symphony Orchestra</u>, 557 F. Supp. 230 (D. Mass.1983) (applying Massachusetts law).

19.     During Plaintiff Fantini's tenure employed as Director of General

Accounting Fantini discovered major errors in the Salem College's accounting

records and procedures.

20.     The following events took place during Plaintiff's full-time employment as

Director of General Accounting from April 3, 2000 through November 11, 2001,

during one year and seven months of employment;

1.     **MAJOR WORK EVENT NUMBER ONE; (Edward Mannings' Financial
       neglect of accounting entries on ledger books)**

21.     Mr. Edward Manning supervised the Financial Services Department and

his responsibilities included supplying Fantini with accounting data to fulfill her

work obligations.  It was Mr. Manning's responsibility to submit general ledger

entries to Fantini so that Fantini could complete accounting reconciliations.

22.     Edward Manning repeatedly failed to provide Fantini with financial

transactions to be recorded in the journals and then posted to various ledger

books.

23.     The Plaintiff discovered that Edward Manning, as Director Financial

Services, approached one of Plaintiff's staff employees, (Lisa Marcella), and

ordered her to make changes to the general ledger system by removing budgetary

controls that limited spending for the Defendant Salem State.

24.     Plaintiff Fantini reported the conduct of Edward Manning to Defendant

DeLVecchio because she reasonably believed this type of conduct violated

Massachusetts State regulations governing Conflict of Interest and Financial

Disclosure Law for State Employees, <u>annexed as Exhibit "3",</u> as well as GAAP,

(Generally Accepted Accounting Principles).

25.    Plaintiff checked on the propriety of the Edward Manning instruction to her staff employee, because Manning attempted to circumvent the budgetary controls of the Defendant Salem College that PeopleSoft (the Accounting Software Program used by the College). See (Conflict of Interest Law and Financial Disclosure Law); annexed as Exhibit "3."

## 2.   MAJOR WORK EVENT NUMBER TWO; (Reporting Financial misdeeds)

26.    Edward Manning repeatedly pressured Fantini, to approve the Student Financial Module Interface Design which allowed Student financial transaction information to be posted in Defendant Salem State's General ledger.

27.    Plaintiff refused to fulfill the orders of Edward Manning because his suggested ploy would have corrupted the Defendant Salem College's financial information rendering the transactions unable to be audited.

28.    The demands Edward Manning made to Plaintiff to improperly approve these software system's interface transaction violated the specific duties of Plaintiff's job description to ensure that accurate reports are made to Office of the Comptroller.

29.    Edward Manning's' requests to Fantini, resulted in numerous reportable errors which were noted in the Massachusetts Fiscal Year 2001 Audit Report. These errors were acknowledged by Defendant Salem College's Legal Counsel before M.C.A.D. within Rebuttal Briefs and Memoranda during investigation under disability and gender discrimination by M.C.A.D. investigators.

30.    No action was ever taken to discipline Manning; (a male Director) instead Plaintiff Fantini was continuously singled out and disparately treated by Defendant DelVecchio on account of Fantini's gender as a female, and in

retaliation for Plaintiff's repetitive complaints to Salem College Human Resources Department, concerning Manning's behavior.

31.    Upon information and belief, the Defendant DelVecchio was angered that Plaintiff had interfered with Edward Manning's scheme to order Lisa Marcella to remove budgetary controls that limited budget spending for the Defendant Salem, in violation of State government regulations.

32.    Plaintiff reported Edward Manning's behavior to Defendant DelVecchio, because she believed that removing the budgetary controls that were instituted by Vice President Napora through PeopleSoft computerized accounting system, violated the Defendant Salem Colleges' policies and financial control systems, to limit payroll spending for the Defendant College.

33.    Plaintiff Fantini engaged in protected activity by reporting Edward Manning to Defendant DelVecchio and management.

34.    Defendant DelVecchio also chastised Plaintiff for documenting Edward Manning's behavior into Plaintiff's by-weekly report.

### 3.    MAJOR WORK EVENT NUMBER THREE (Demand to Fire Gloria Gove)

35.    Defendant DelVecchio and Mary Miller repeatedly ordered Plaintiff to provide co-worker Gove with false deadlines, in an attempt to force her to fail to meet deadlines so Gove could be fired. Employee Gloria Gove was being driven out of accounting department of College and Plaintiff was required to assist in the ploy.

36.    Plaintiff Fantini was also approached by Mary Miller, the Head of Human Resources, ("Miller") and told "I want Gloria Gove fired;" and Plaintiff Fantini

was repeatedly asked if she gave Gove the deadline to complete an assignment, in an attempt to obstruct and interfere with Gove's work performance;

37.    Despite Defendant DelVecchio's approval of Plaintiff's work performance, once Plaintiff reported misconduct of other employees, Defendant DelVecchio engaged in a steady barrage of opprobrious comments, insults, in conscious disregard to Plaintiff's employee rights under Contract to be treated equally

### 4.    MAJOR WORK EVENT NUMBER FOUR; (Verbal Harassment for eleven months)

38.    During the Plaintiff's last eleven months of employment from December of 2000, through the first week of November of 2001, Plaintiff was verbally harassed by her immediate Supervisor, Defendant DelVecchio.

39.    Specifically, DelVecchio made the following verbal statements to Plaintiff to the point where she physically left her workplace on November 8, 2001; "You're a very weak Supervisor;" "you are not getting anymore credits to receive Flex time;" "your memory is lacking" "you are slow" "why can't you dress as nice as Roberto," "he comes to work with a nice suit; and his shoes are shined, (a male employee).

40.    Defendant DelVecchio carried out an abusive and vociferous campaign of verbally attacking the character of Plaintiff Fantini and forcing her to leave her job and suffer nervous breakdown on November 8, 2001.

41.    In one particular episode, Plaintiff requested to obtain flex time hours, to allow her to work more at favorable times throughout the week. Suddenly DelVecchio forced her face within three inches of Plaintiff's face, and screamed; "you made your bed, and now your gonna lie in it."

42.    On September 5, of 2001, Defendant Delvecchio personally informed

Plaintiff Fantini that her duties as part of the scope of her employment as Director

of Accounting would actually be fulfilled by two or three temporary employees

rather than herself.    In fact, Plaintiff Fantini was never allowed any type of

formal hearing or opportunity to refute and contest the

conclusions reached by her Supervisor in arriving at this conclusion that Plaintiff

is not qualified to perform her work tasks.

## 5.    MAJOR WORK EVENT NUMBER FIVE (Plaintiff left work November 8, 2001, after mental breakdown)

43.    Fantini never once in her entire year and seven months of employment

received a formal written warning or Performance Evaluation describing that her

work performance was lacking.    Neither did Fantini ever receive any notice of

employer's intent to place her on probation, warning, or potential termination.

44.    On November 8, 2001, Plaintiff Fantini was suffering severe mental effects

caused by the last eleven months of hostility by her Supervisor who falsely

marshaled evidence seeking to terminate Plaintiff's employment.

45.    Dr. Marc N. Sherman in a letter dated November 13, 2001, stated that

Plaintiff Fantini, suffered from major depression and anxiety and would be unable

to return to work as a result.    See Exhibit "13."

46.    Dr. Sherman further recommended that Plaintiff Fantini not return to

work until the "problems had been resolved."    See Exhibit "13."

47.    Plaintiff Fantini was placed on 12 work weeks of leave under her federally

protected rights under the Family Medical Leave Act, 29 U.S.C. § 2612(a)(1);

(hereinafter "FMLA").

48.    Two months after Plaintiff was out on leave, under the FMLA after the

Plaintiff Fantini had physical left the actual premises of the Defendant Salem

State, Defendant DelVecchio suddenly began documenting errors that Plaintiff

allegedly committed in performing her job duties. The Plaintiff was never

approached or informed of any of the alleged errors she committed in her capacity

as Director of Accounting, for Defendant Salem College.

### 6.    MAJOR WORK EVENT NUMBER SIX (Termination from work by Defendant DelVecchio, Napora, and Harrington)

49.    On February 8, 2002, Defendant Delvecchio recommended to Vice

President Napora that the Defendant Salem College terminate Plaintiff Fantini,

even though numerous temporary employees had already assumed the role of

Plaintiff's position as Director of General Accounting months prior to Fantini's

required medical leave due to serious health condition. See Letter dated February

8, 2002, authored by Defendant Delvecchio recommending the termination of

Plaintiff's employment annexed as Exhibit "17." See also letter of February 11,

2002, of Defendant Vice President Janyce Napora accepting recommendation to

terminate Fantini annexed as Exhibit "18." See also letter dated February 14,

2002, of President of Salem College Nancy Harrington, accepting recommendation

to adopt reasons recommending termination of Plaintiff Fantini annexed as

Exhibit "19."

50.    Without ever offering Plaintiff Fantini any form of procedural due process

of law, including, (1).  Notice and (2).  The opportunity to be heard; Defendant

Vice President Napora as a State actor; conspired with Defendant DelVecchio the

other State actor, through their conspiracy, and transmitted Plaintiff's

termination recommendation to Defendant Salem College President Harrington on February 11, 2002.

51.     Without ever offering Plaintiff Fantini any form of <u>procedural due process of law</u>, including, (1).  Notice and (2).  The opportunity to be heard; and without ever giving the now mentally disabled employee unable to work; the (3).  right to confront accusers that concluded she is responsible for alleged misconduct or negligent acts; (4).  Without ever conducting a hearing; or written notice of allegations of negligent employment conduct; the Defendant President of Salem College; Harrington on February 14, 2002 in further support of the conspiracy to terminate Plaintiff Fantini, notified her that the employment position she held as Director of Financing was now terminated.

52.     Despite the repeated requests made by Plaintiff's Union representative, Helen Watson-Felt to replace Plaintiff's immediate Supervisor, and for basic changes in the procedures, facilities, and personnel at Defendant College, Defendant's DelVecchio, Harrington, and Napora did nothing to adequately alter the grossly inadequate and outrageous working conditions at Defendant Salem College.

53.     Defendants Harrington and Napora who received word of Plaintiff's internal grievances filed against her immediate Supervisor, ignored the requests of Plaintiff, despite knowing that other co-workers and employees had made similar complaints about Defendant DelVecchio's mistreatment of employees.

54.     As a direct and proximate result of the failure for Defendant Mass. Board to implement a written procedure for Plaintiff or other similarly situated employees to follow, who suffer severe abuse by their supervisor, Defendants allowed the Salem

College's Department of Accounting to operate in a manner which perpetuated grossly inappropriate working environment.

55.    Defendants Mass. Board, and Salem College, *acting individually*, and *acting-in-concert* and *vicariously*; both engaged in acts that were done unlawfully, unreasonably and contrary to Massachusetts State contract and tort law, causing Plaintiff humiliation, embarrassment and mental anguish that will continue to harm Plaintiff in the form of severe depression and personal injury as a result of the suffering of a heart attack on November 23, 2001.

### 7.    MAJOR WORK EVENT NUMBER SEVEN Defendants DelVecchio, Napora, and Harrington made up false charges of misconduct of Plaintiff after she left work November 8, 2001 to secure termination

56.    During the entire one year and seven months Plaintiff was employed with college, (from April 2000, through November 2001); she was never given any formal evaluation describing the Plaintiff's negative job performance, or her inability to successfully perform the job expectations or the essential functions of her position as Director of General Accounting.

57.    Only after Plaintiff left work due to suffering from serious mental; illness in November of 2001, and unable to return due to permanent illness suffered by Defendant's direct conduct, did individually named College officials, invent false charges that Plaintiff failed to fulfill her job requirements.

58.    Without anything justifying their actions under Massachusetts or Federal Laws, or the Board of Higher Education's H.R. Office, collective bargaining policies, the State-actor-College-Defendants failed to ever implement a progressive discipline model (oral warning, written warning, valid dismissal or termination), to counsel Plaintiff if she in fact was a problem employee.

13

59.    In the month of February 2002, Plaintiff's leave under the FMLA was exhausted according to the Defendant Salem College.

60.    During the months of August and September 2005, Plaintiff has discovered from discussions with her treating physicians that her current health problems are a direct and proximate result of Defendant DelVecchio, Miller, and the Defendant Massachusetts Board of Higher Education for their reckless and intentional conduct toward Plaintiff as described throughout this Complaint.

61.    On April of 2002, Plaintiff filed an internal grievance claim against the Defendant College and individual Defendants alleging discrimination based on disability due to request for accommodation to accommodate Plaintiff's disability prior to leaving work.  The requested accommodation was further pursued through Plaintiff's Union representative Ms. Helen Watson-felt.  See Exhibit "13."

62.    Upon the College's failure to ever rectify Plaintiff's internal grievance, Plaintiff filed discrimination complaint against the College and specific employees, with the Massachusetts Commission Against Discrimination (MCAD) alleging disability discrimination, under M.G.L. c. 151B.

63.    By letter dated November 23, 2001, Dr. Stephen J. Weider informed the Defendant Salem State, that Plaintiff Fantini had been diagnosed with work-related Single Episode Major Depression and recommended that Fantini collect workers compensation.

64.    On December 28, 2001, Fantini forwarded to her treating physician, Dr. Wieder's December 21, 2001 evaluation, in which he stated that Fantini required an additional six weeks of leave, in excess of her sick, vacation and personal time, to February 3, 2002.

65. By letter dated January 10, 2001, Miller informed Plaintiff Fantini that her leave would continue as paid due to health reasons. Thereafter, Plaintiff Fantini forwarded Dr. Weider's evaluation dated January 25, 2002, in which he recommended as additional six weeks of leave.

66. Eight months after Plaintiff Fantini was terminated from her employment position and while undergoing active treatment for "severe depression" anxiety and numerous other health complaints, Plaintiff suffered a heart attack on November 14, 2002, and was hospitalized for a total of nine nights and was discharged from Anna Jacques Hospital of Newburyport, Massachusetts, November 22, 2002.

67. Plaintiff spent nine nights (9) at Anna Jacques Hospital until being discharged on November 22, 2002, as a proximate result of her deteriorating condition from prior work related stress she had experienced, that led Plaintiff to suffer a heart attack.

68. As of October 2005, Plaintiff is four years away from retirement at age 61, without having paid any income into her Social Security retirement plan since being terminated from Defendant Salem State in February 2002 resulting in serious financial losses, personal injury, for which Plaintiff seeks compensatory and punitive damages.

69. Despite her efforts, in seeking an informal grievance through her collective bargaining representative, through her Union, ("The Association of Professional Administrators"), to rectify the hostility Plaintiff suffered, Defendant Salem State purposely denied Plaintiff's internal grievance complaints. See Exhibits "13" and "14."

70.    Plaintiff has never been given an opportunity to be heard on her claim that she was wrongfully discharged, deprived of her retirement pay, denied financial salary over the last four years based on contractual agreement; or that she suffered from personal injury including major depression.

71.    Plaintiff seeks compensatory and punitive damages against all Defendants, for directly and proximately causing her to suffer a heart attack in November of 2002; without ever being given the fair opportunity to refute allegations of substandard or neglect of her work performance.

72.    In addition to Plaintiff suffering personal health problems and ongoing loss of income and attainment of retirement pension benefits, Plaintiff has been Stigmatized; for wrongful termination of employment; associated with her work performance;

73.    Defendants fired Plaintiff and coded her termination in official State government documents as one "for cause" and not one attributable to the retaliation for engaging in protected activity.

74.    Assuming there existed valid and justifiable language providing the College with the right to terminate Plaintiff-employee, under the Agreement, Defendant Board of Higher Education, and Plaintiff's Union, the (A.P.A.), Article VIII, B.1;d., application of the above clause to terminate Plaintiff, under these specific facts was willful, reckless and contrary to public policy.

75.    The Defendant Board of Higher Education's Board of Trustees authored and invented the language of Article VIII, B.1;d., (Service of Administrators with Less than Five (5) Years Experience), to apply only to employees who are presumed to have failed to meet a progressive discipline model.

16

76.    Defendant Mass. Board advertised to all union and non-union employees the following within the Preamble of the ("Agreement");

"this agreement is entered into by and between the Board of Higher Education and the Association of Professional Administrators, Massachusetts Teachers Association/.National Education Association as the exclusive bargaining agent for positions in the bargaining unit as set forth in Appendix A of this Agreement,"

77.    Rather than the Defendant Mass. Board fulfilling its duty owed to Plaintiff to negotiate in good faith the fair dealings of her collective bargaining rights and remedies, (the Association of Professional Administrators), the Defendant Mass. Board's Office of Human Resources, Defendant Mass. Board, breached their good faith duty owed to Plaintiff to ensure her rights as an employee and a female were protected while employed for Defendant College.

78.    It was negligence and dereliction of duty for the Defendant Mass. Board to neglect assigning to the Defendant College the responsibility of carefully investigating under Article XII, (Safety Procedures), whether the Plaintiff's serious emotional breakdown that occurred at her work location, at Defendant Salem College, on November 8, 2001, was proximately caused by the "unsafe or unhealthy" working conditions from her relationship with Defendant DelVecchio. See Article XII, (Safety Procedures) pg. 90, annexed as Exhibit "2."

79.    In essence, the Defendant Mass. Board engaged in violating the Plaintiff Fantini's' due process rights under the Fourteenth Amendment to the United States Constitution, and First Amendment right under the First Amendment in the resulting termination of Plaintiff due to her report of serious misconduct by Defendant College officials.

80.     Both Defendant Mass. Board, and Salem College, deliberately agreed to terminate Plaintiff without the use of collective bargaining agreement that purposely failed to account for State employees who suffer serious mental illness, leaving work, while still in need of protection of job security under collective bargaining agreement.

81.     The concrete supporting facts that plead a conspiracy between Defendant Mass. Board as one entity, and Salem College as second entity, is the <u>agreement to not provide</u> job security to mentally Plaintiff Fantini, who left work due to "mental breakdown."

82.     It is not credible for either Defendant Salem College or Mass. Board to await until well after Fantini's November 8, 2001 leave from work to initially and for the first time formally criticize her in writing based on her alleged substandard work performance.  Therefore such criticism is pretextual and discriminatory under Title VII of Civil Rights Act and M.G.L. c. 151B.

83.     The above described acts directed against Fantini by Defendant Salem College Officials had the purpose or effect of unreasonably interfering with Fantini's work performance and/or creating an intimidating hostile, or offensive working environment.

84.     While employed as Director of Accounting, Fantini was denied promotional opportunity, general advancement, and she was otherwise discriminated against by Salem College State Officials in the terms and conditions of her employment, due to her gender and due to her contacting her immediate Supervisor, Defendant DelVecchio, to report violation of Massachusetts State laws, and regulations, as well as Defendant College written policies.

85.    The above described conduct by Salem College, and Mass Board was in direct violation of both Defendant State actors' own written policies regarding employee discipline and discrimination.

86.    Salem College and Mass Board's above said acts have caused Fantini to lose income, to have diminished earning capacity, to lose goodwill and standing within Salem College, to suffer emotional distress, and the said acts have damaged Fantini's personal physical and mental health, reputation and character within the State of Massachusetts and elsewhere, and have otherwise injured her.

### COUNT ONE
### VIOLATION OF TITLE VII OF THE 1964
### FEDERAL CIVIL RIGHTS ACTS, As Amended, 42 U.S.C. § 2000e, et seq.
### (Discrimination on the basis of gender against all Defendants)

87.    The Plaintiff adopts by reference all above allegations, within paragraphs 1-86 and further alleges:

88.    All conditions precedent regarding this Count have been complied with, because Plaintiff Fantini exhausted her administrative remedies by alerting M.C.A.D. officials within her Memorandum of Law, and Defendant Salem College's Rebuttal that she was discriminated against on the basis of sex and gender. Both Fantini's Memorandum of Law and Respondent Salem College's Rebuttal were filed during investigatory period and before E.E.O.C. right to sue letter was issued and dated October 12, 2005. See Exhibit "A" at conclusion of Complaint. Fantini's sex and gender discrimination claims were properly raised before M.C.A.D. See Ianetta v. Putnam Investments, Inc., 142 F. Supp. 2d 131 (D.Mass. 2001). Plaintiff's Memorandum before the MCAD, alleging discrimination based on gender, and Respondent's Rebuttal, acknowledging such allegations, qualifies to put such

additional allegations into motion prior to issuance of "Right to Sue Letter." See

Exhibits "A" and "B" at conclusion of Verified Complaint. See Borase v. M/A-Com,

Inc., 906 F. Supp. 65, 68 (D. Mass. 1995).

89.    The above said illegal acts were the direct and proximate cause of Fantini's

termination of employment with Salem College.

90.    A reasonable female aged 56 and 57, would have had her work performance

interfered with and would have also had her psychological well-being seriously

affected, and Fantini's work performance and psychological well-being were so

affected as described throughout this Complaint.

91.    All Conditions precedent regarding this Count alleging discrimination

based upon sex and gender have been complied with through Plaintiff's M.C.A.D

complaint alerting E.E.O.C. and M.C.A.D. of discrimination on the basis of these

two categories.   See Right to Sue Letter attached at conclusion of Complaint

annexed as Exhibit "A," and see actual pages of MCAD Memorandum and

Rebuttal annexed as Exhibit "B."

**COUNT TWO**
**DEPRIVATION OF RIGHTS; (42 U.S.C. § 1983)**
**PLAINTIFF FANITNI v. MASS. BOARD OF HIGHER ED. And**
**SALEM COLLEGE, AND ALL INDIVIDUALLY NAMED DEFENDANTS**

92.    Plaintiff re-alleges and incorporates herein the allegations contained in

paragraphs 1-91 of this Complaint.

93.    This cause of action is to redress the deprivation, under color of

Massachusetts State Statute, ordinance, regulation, policy, unwritten custom,

practice or usage of a right, privilege, secured by the First Amendment right to

engage in protected activity as whistleblower, Fourth Amendment right to be

secure in place of employment, and Fourteenth Amendment right to due process, to the United States Constitution.

94.     At all material times to this Complaint, Defendants Salem College, and Mass. Board of Higher Education, and all individually named Defendants, were acting under color of Massachusetts State laws, statutes, ordinances, codes and regulations, while depriving the Plaintiff of established legal rights, including but not limited to:

A).    The right to be free from sexual harassment;
B).    The right to be free from discrimination on the basis of disability,
C).    The right to be free from gender discrimination;
D).    The right to make contracts, and engage in protected activity;
E).    The right to speak and report misconduct to Fantini's Supervisor and Head Resources Department, as well as Salem College Administration, and engage in protected activity.

95.     Each of the individual Defendant's here, separately and in concert, deprived Plaintiff Fantini of the rights, privileges and immunities secured to her by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

96.     The above articulated constitutional violations were directly and proximately caused by Defendant Salem College and Mass. Board, as well as all individually named Defendant's by their deliberate indifference to the maintenance, training control of its officers, agents, employees, contractors, deputies, temporary employees, and the constitutional violations set forth above were proximately caused by customs, practices, policies and decisions of Defendant Salem State and Mass Board, including but not limited to inadequately training and supervising employees of Mass. Board, and Salem College with

21