respect to use of proper procedures in employing Plaintiff Fantini and securing her rights under Federal and State Constitutions.

97.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, each of them, Plaintiff Fantini has suffered great mental and physical pain, suffering anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment and apprehension including suffering a heart attack and forced to be hospitalized for night nights until November 22, 2002.

98.     Additionally, Plaintiff has been forced to incur substantial amounts for attorney's fees, hospital fees, expenses, loss of health insurance, and pension benefits, and other costs in the prosecution of the above-articulated constitutional violations.

99.     As a direct result of these above described acts, Plaintiff has lost future wages as a result of being wrongfully terminated, in an amount to be determined according to proof at trial. As a proximate result of the aforementioned conduct of the Defendants, and each of them, Plaintiff sustained permanent emotional injuries and required to and did employ physicians and surgeons to examine, treat, and care for Plaintiff, and incurred medical expenses for said treatment including the burden of the sixty year old Plaintiff to borrow money from her two daughters to pay for these costs.

100.    Plaintiff Fantini is entitled to, and hereby demands costs, Attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

101.    Plaintiff hereby demands that a jury be empaneled for the trial of this matter.

## COUNT THREE
## HOSTILE WORK ENVIRONMENT

102. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1-101 of this Complaint.

103. For over one year the 57 year old female Plaintiff was consistently subjected to grossly unfair employment conditions compared to male Edward employee, Edward Manning although Plaintiff was not responsible for any of the wrongfully reported financial entries on the Salem State ledger.

104. As a female, Plaintiff is a member of a protected group, and the conduct she was subjected to by her Supervisor DelVecchio, including being required to forcibly surrender here Flex Time, and being prevented from attending doctors appointments, and missing an appointment with her banker to refinance her home, and the harassment was based on her gender and was sufficiently severe or pervasive to create abusive working environment, imputing liability to Salem State.

105. As a direct and proximate result of hostile work environment created by Defendant DelVecchio's (Plaintiff's Supervisor), Plaintiff was constructively discharged from her employment at Defendant Salem State.

106. Defendants Napora, Harrington, and Defendant Mass. Board, had actual or constructive knowledge of the discriminatory actions, Plaintiff was subjected to by Defendant Edward Manning, but no Supervisor took any action to terminate or abate the hostile work conditions which caused Plaintiff to suffer major depression, and a heart attack.

107. It can be inferred from the working relationship between Plaintiff and her immediate Supervisor, DelVeccio, that Plaintiff was forced to work inconvenient

23

hours, lose her Flex-Time hours, while similarly situated male Directors such as Edward Manning, was not subjected to any of this.

108.  Plaintiff left work on November 8, 2001, and began treating with numerous health professionals, due to severe major depression, and two months after she was out on leave under the FMLA, her Supervisor found the perfect opportunity to refer to her pejoratively in written letters to Defendants Napora, and Harrington, leading to altered work conditions resulting in firing Plaintiff from her job.

## COUNT FOUR
## VIOLATION OF 42 U.S.C. § 1981(b)

109.  Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1-108 of this Complaint.

110.  According to Defendant Salem State Employee Handbook, all employees are to be evaluated without being subjected to discrimination based on "gender," "sex" and numerous other protected categories.

111.  Despite written promises explicitly promising not to discriminate against any employee on the basis of "gender" and "sex," Plaintiff Fantini, as a white Caucasian citizen, with the right to make and enforce contracts, was the object of a continuing pattern of gender discrimination, including derogatory conduct, in the form of constant yelling by Defendant DelVecchio at Plaintiff in retaliation for Plaintiff reporting Edward Manning's serious misconduct in seeking to manipulate Salem College' general ledger of financial accounting entries which violated GAAP.

112. Defendant DelVecchio commented with sexual innuendoes about clothing worn by Plaintiff Fantini, but not male employees such as Defendant Edward Manning. The conduct of Defendants violated Plaintiff's contractual right to be provided with the full and equal benefits of all laws enjoyed by other white citizen employees of Defendant Salem State.

113. The effect of Defendant DelVecchio and Edward Manning policies and practices described above has been to deprive Plaintiff of equal employment opportunities and to deprive her of the same right to make and enforce contracts as is enjoyed by other female white citizens. The Plaintiff suffered specific damages including major depression, loss of income, and suffered a heart attack on November 23, 2002 causing her to be admitted into Hospital for nine (9) nights. WHEREFORE, Plaintiff respectfully prays this Court to award her lost back pay, reimbursement for lost fringe benefits, and award her compensatory damages in the amount of $ 500,000.

## COUNT FIVE
### VIOLATION OF CIVIL RIGHTS ACTS OF 1991
### WRONGFUL TERMINATION; FAILURE TO TRANSFER TO NEW DEPARTMENT

114. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1-113 of this Complaint.

115. On October 12, 2005, a "Notice of Right to Sue" letter was issued from the District Office of the Equal Employment Opportunity Commission of J.F.K. Building in Boston (a copy is attached as Exhibit "A" at conclusion of Complaint), entitling Plaintiff to institute a civil action in the appropriate Federal District Court within 90 days of the date of receipt of the notice.

116.  Plaintiff properly and timely raised gender discrimination within Memorandum of Fact and Law, which as confirmed and elaborated upon by Rebuttal Memorandum filed by Respondent Salem State College. See <u>Exhibit "B"</u> at conclusion of Verified Complaint.

117.  Plaintiff was the object of a continuing pattern of gender discrimination and derogatory conduct because she followed the Defendant Salem State's State Ethics Commission's Conflict of Interest Law and Financial Disclosure Law, annexed as <u>Exhibit "3"</u> within separately filed "Offer of Proof in Support of Verified Complaint.

118.  As a direct and proximate result of Plaintiff's honest and good-faith actions in whistle-blowing the misconduct of Edward Manning, for manipulating general ledger entries, and Defendant DelVecchio's severe and pervasive harassment, Plaintiff suffered enormous health problems resulting in her taking antidepressant medication, and suffering anxiety, and interference with her concentration, memory, socialization, and the ability to make decisions. See <u>Exhibit "7" within "Offer of Proof"</u> all medical reports evidencing Plaintiff's severe health problems are proximate cause of Defendant Salem State's grossly negligent behavior.

119.  The above-described actions and omissions constitute discriminatory treatment and retaliation against Plaintiff for both the nature of Plaintiff's claim and for the act of pursuing her entitlement to remedial action by her Union. Defendant DelVecchio, Napora, and Fantini, deliberately coded Plaintiff's work history to appear to violate departmental policies two and a half months after Plaintiff voluntarily left work on November 8, 2001, as a means to *"cover-up-*

*their-behind*" knowing Plaintiff treated with physicians and would likely sue for pain and suffering.

## COUNT SIX
## DEPRIVATION OF LIBERTY – VIOLATION OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION FANTINI V. MASSACHUSETTS BOARD OF HIGHER EDUCATION et. al., SALEM STATE COLLEGE, et. al.

As to Defendants Board of Higher Education in its official capacity exercising supervisory powers over Defendant Salem State College, Salem State College, and all individually named Defendants, the Plaintiff complains as follows:

120. Plaintiff repeats and realleges paragraphs 1-119 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

121. The published assertions before the M.C.A.D, and throughout Plaintiff's employee file, by Defendant DelVecchio, Mary Miller, and other Defendants employed for Mass. Board, have stigmatized the Plaintiff's good name reputation, and jeopardized her prospects for future employment.

122. On or about May 7, 2002, Plaintiff Fantini filed a complaint with the MCAD, in the action known as ("Marianne Fantini v. Salem State College and Matilda DelVecchio; Docket Number 02BEM02025; Charge Number 161A200232, alleging discrimination based on disability. On or about February 24, 2005 the M.C.A.D. issued a decision dismissing Plaintiff allegations of discrimination under M.G.L. C. 151(b).

123. When original allegations were made against Defendant Salem State College alleging discrimination based on disability, Plaintiff suffered from numerous memory

problems, and upon leaving her place of employment on November 8, 2001, Plaintiff had not fully described the numerous allegations within this complaint to her Attorney. See "discovery rule" see <u>Riley v. Presnell</u>, 565 N.E. 2d (Mass. 1991) (tolling state statute of limitations under M.G.L. c. 260, § 7.

124.   Furthermore, Plaintiff approached her Attorney on September of 2005, and described her treatment with health providers revealing for the first time, that she was released from Anna Jacques Hospital on November 22, 2002, following the heart attack she suffered. Plaintiff suffers from all the following;

A.   Major depression, Post Traumatic stress;
B.   Adrenal failure;
C.   Disorder of the pulmonary circulatory system, (heart attack);
D.   Total and Permanent Disability as result of above disorders. See Offer of

Proof Exhibits " 7 ".

## COUNT SEVEN
## VIOLATION OF M.G.L. c. 151B

125.   Plaintiff repeats and realleges paragraphs 1-124 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

126.   If Plaintiff's original charge raised before the M.C.A.D. was insufficient to alert agency of Plaintiff's allegations of discrimination on the basis of sex and gender, her Memorandum of Law, and Respondent Salem State College's Rebuttal filed during investigatory period and before right-to-sue letter was issued, certainly provided such notice of discrimination based on sex and gender against Edward Manning. See <u>Exhibit "B."</u>

127.   All Conditions precedent regarding this Count alleging discrimination based upon disability, and gender have been complied with through Plaintiff's

28

M.C.A.D complaint alerting MCAD agency of discrimination on the basis of disability, and gender. See Right to Sue Letter attached at conclusion of Complaint annexed as Exhibit "A."

## COUNT EIGHT
## NEGLIGENCE CAUSING PERSONAL INJURY IN FORM OF HEART ATTACK AND HOSPITLIZATION UNTIL NOVEMBER 22, 2002; AND ALL OTHER HEALTH PROBLEMS (against all Defendants)

As to the Defendants DelVecchio and Miller in their individual and official capacities, Plaintiff complains as follows:

128. Plaintiff repeats and realleges paragraphs 1-127 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

129. All Defendants owed duty of care to the Plaintiff and breached such duty. As a direct and proximate result of the severe mental distress suffered by Plaintiff, during the last eleven months of employment, resulting from the negligence of Defendant Salem College and all individually named Defendants, Plaintiff sustained a traumatic heart injury, with cognitive deficits which may be permanent.

130. Plaintiff further sustained emotional, mental and psychological damage and injury, including personality change which may be permanent as a result of the heart attack that she suffered on forcing her to be hospitalized until November 22, 2002.

131. Plaintiff had suffered while employed for Defendant Salem College severe emotional distress, including humiliation and embarrassment, and worry and concern about her future ability to provide for herself, that continues until

29

October 2005. Plaintiff Fantini has incurred reasonable and necessary medical expenses and hospitalization in excess of $ 60,000.

132. Plaintiff is a completely different person, with a completely different level of energy, level of intellect, level of emotional response, and in every way the she was before being severely verbally traumatized during the course of eleven months of her employment from December 2000 through November 2001.

133. Plaintiff has endured pain suffering, mental anguish, post traumatic stress disorder, which her current treating physician, Dr. Stephen J. Wieder, M.D. from Newburyport, Massachusetts has described in his report dated July 11, 2003, and annexed within Medical Records of Offer of Proof; Exhibit "7."

134. Plaintiff has lost the full use of her mind and mental capacities and suffered a diminution of the quality of life, inability or difficulty participating in social activities, withdrawal or partial withdrawal from ordinary activities of her life, and loss of the ability to work, recreational activities, leisure activities, sleeping, and all other aspects of life have been significantly compromised as a direct and proximate result of the actions and inactions of Defendant Salem State, and Defendants, DelVecchio, Harrington, Napora, Manning and Miller.

## COUNT NINE
## RES IPSA LOQUITUR

As to Defendants Board of Higher Education in its official capacity exercising supervisory powers over Defendant Salem State College, Salem State College, and all individually named Defendants, the Plaintiff complains as follows:

135. Plaintiff repeats and realleges paragraphs 1-134 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

136. That an Accountant full-time employee with twenty years of experience, and no prior long term interrupted work history, and described by doctors to appear younger than her age of 61, (56 at time of nervous breakdown), does not suffer severe mental breakdown, and heart attack absent negligence of Defendants.

137. That for 37 and up to 50 hours per week, the Plaintiff was employed full-time for the Defendant Salem College, and under the exclusive control of her immediate Supervisor, Defendant DeLVecchio.

138. That Plaintiff began treating with numerous doctors right after she voluntarily left work on November 8, 2001, and diagnosed with symptoms she never experienced ever before in her life.

139. That Plaintiff was lawfully on the premises of the Defendant Salem College and employed in the position as Director of Financial Accounting and received positive employment reviews for the first year of employment, until she was severely harassed and retaliated against over the last eleven months of employment.

140. That all of the Plaintiff's private and public work records and personnel that had knowledge of what happened to Plaintiff's mental health requiring her to obtain Long Term Disability compensation, are within the exclusive control of the Defendant.

141. That all of the training, and lack of training of Plaintiff's immediate Supervisor, Defendant DelVecchio, and every other Defendant employed at Defendant Salem College, that contributed to the Plaintiff severe mental anguish, were within the exclusive control of the Defendant Mass. Board.

142. That Plaintiff Fantini did nothing wrongful to contribute to the causation of her current mental and physical health problems, including, post traumatic stress, severe depression, and suffering a heart attack in November of 2002, and requiring her to be inpatient at Anna Jacques Hospital until November 22, 2002.

## COUNT TEN
### BREACH OF CONTRACT UNDER M.G.L. c. 260 § 4
### (FANTINI V. SALEM COLLEGE; AND INDIVIDUAL DEFENDANTS)

As to Defendant Board of Higher Education in its official capacity exercising supervisory powers over Defendant Salem State College, Salem State College, and all individually named Defendants, the Plaintiff complains as follows:

143. Plaintiff repeats and realleges paragraphs 1-142 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

144. Defendant Salem College's, ("Salem State College Employee Handbook); constituted a contract between Salem College, and Plaintiff Fantini.

145. Page 8, Section entitled <u>Conflict of Interest</u> portion of Handbook provides that "All employees of the College are subject to the Massachusetts Conflict of Interest Law." "The purpose of this law is to ensure that public employee's private financial interests and personal relationships do not conflict with their public obligations."

146. That further on in Page 8, and 9, section entitled <u>Conflict of Interest</u> portion of Handbook, it states, "The responsibility for compliance and penalties for violation fall solely on the individual, however the integrity of the entire community is put at risk if any of its members are guilty of unlawful conflicts."

147. That further on in the Page 9, the Handbook states, "questions concerning the application of these guidelines in any particular situation should be addressed to the appropriate Area Head."

148. That Plaintiff Fantini, in reliance upon these above written clauses to her detriment, reported the specific "conflicts of interests" that Edward Manning engaged in, while seeking to obstruct the Defendant College's Accounting customs and practices.

149. That Plaintiff Fantini, in reliance upon these above written clauses to her detriment, to comply with the Massachusetts Conflict of Interest Law, and known Salem College policies, reported Edward Manning's violations of GAAP, and violation of the above mentioned Conflict of Interest Law, relying upon the written language that states, "the integrity of the entire community is put at risk if any of its members are guilty of unlawful conflicts.

150. As a result of Defendant Salem College's callous disregard for Plaintiff's voicing the obstructions of Defendant Manning in violation of Defendant Salem College's requirements upon employees to report such misconduct, each stage of Plaintiff Fantini's termination of employment was tainted, obstructive, illegal, and in breach of the Employee Handbook.

151. Defendant Salem College's failure to uphold its written policies of enforcing "the integrity of the entire community," and its retaliation by "the

33

appropriate Area Head" (Defendant DelVecchio), who rather than reward Plaintiff, instead fired her, breached the written obligations owed to Plaintiff Fantini to have her job security protected, rather than terminated.

152. Defendant Salem State failed to perform its obligations under employment contract to provide protection by the Union, and breached its common law duty to provide protection to Plaintiff through her collective bargaining agreement offered by the Association of Professional Administrators, although Plaintiff's check was charged union membership dues each and every week she received a paycheck.

## COUNT ELEVEN
### BREACH OF CONTRACT UNDER M.G.L. c. 260 § 4 (FANTINI V. MASS. BOARD OF HIGHER EDUCATION), AND INDIVUAL DEFENDANTS)

As to Defendant Board of Higher Education in its official capacity exercising supervisory powers over Defendant Salem State College, Salem State College, and all individually named Defendants, the Plaintiff complains as follows:

153. Plaintiff repeats and realleges paragraphs 1-152 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

154. The Defendant Board of Higher Education's Board of Trustees authored and invented the language of Article VIII, B.1;d., (Service of Administrators with Less than Five (5) Years Experience), to apply only to employees who are presumed to have failed to meet a progressive discipline model.

155. Defendant Mass. Board, made no good faith effort to provide protection to employees that suffer serious mental breakdown at work and forced to leave as a result within any of the Defendant Board of Higher Education's Article VIII,

B.1;d., (Service of Administrators with Less than Five (5) Years Experience),

Clause, or any Clause whatsoever in any of the entire 102 page Union Agreement.

156.    Defendant Mass. Board advertised to all union and non-union employees

the following within the Preamble of the ("Agreement");

"this agreement <u>is entered into by and between</u> the Board of Higher Education and the Association of Professional Administrators, Massachusetts Teachers Association/.National Education Association <u>as the exclusive bargaining agent for positions in the bargaining unit</u> as set forth in Appendix A of this Agreement,"

157.    Defendant Mass. Board breach its contractual duty to Plaintiff, to ensure

that Plaintiff is not subjected to "unsafe or unhealthy" See Article XII, (Safety

Procedures) pg. 90, annexed as <u>Exhibit "2."</u>

## COUNT TWELVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

158.    Plaintiff repeats and realleges paragraphs 1-154 of each and every

allegation in this Complaint with the same force and effect as though fully set

forth herein.

159.    The Defendant Salem State and Mass. Board and each individually named

Defendants knew that that Plaintiff was beginning to suffer from a neurological

disorder including anxiety, hypertension as a proximate result of the severe

emotional distress she was subjected to from her Supervisor, Defendant

DelVecchio leading her to have a heart attack on November 14, 2002.

160.    That all Defendants had a duty to exercise ordinary care toward Plaintiff

as an employee in accordance with the written contractual rights under both the

Employee Handbook, and the Agreement between the Association of Professional

Administrators and the Defendant Mass. Board.

161. That all Defendants employed for Salem State, including, DelVecchio, Napora, and Harrington, deliberately failed to follow written union rules within collective bargaining agreement, and written Employee handbook, in failing to provide Plaintiff with notice and the opportunity to be heard before terminating her employment relationship.

162. That all Defendants including employees of the Defendant Mass. Board, without ever investigating the validity of the negligent Agreement between Mass Board, and Association of Professional Administrators, wrongfully allowed Defendant Fantini to be subjected to severe and pervasive emotional distress.

163. That as a direct and proximate result of the conduct of all Defendants, and each of them, the Plaintiff Fantini, was caused to suffer psychological injuries and harm and has incurred and will continue to incur in the future monetary loss, including but not limited to lost wages, loss of earning capacity, medical expenses, psychiatric counseling, lost pension benefits, lost health care coverage, lost retirement plan, lost flex time, and lost retirement benefits.

164. That the conduct of the Defendants was willful and wanton, and/or with such recklessness for the mental well being of Plaintiff, willful disregard for the employee rights and Union rights of Plaintiff, and willful disregard for rights and safety of Plaintiff, entitling Plaintiff to punitive damages for their egregious conduct.

165. As a direct and proximate result of the conduct of the Defendants, and each of them, the Plaintiff, was caused to suffer mental anguish and mental suffering and ultimately a heart attack in November of 2002, causing her to be hospitalized until November 22, 2002, as well steady treatment with up to five

166. physicians for numerous health problems, including both physical and psychological. See Medical Records within <u>Exhibit "7," of Offer of Proof.</u>

167. In doing the things herein alleged, the Defendants acted willfully, wantonly, and outrageously, and exceeded the bounds of human decency by, among other things, having forced the Plaintiff to suffer permanent mental injuries, leading to Plaintiff to suffer heart attack, and be hospitalized until November 22, 2002.

## COUNT THIRTEEN
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

168. Plaintiff repeats and realleges paragraphs 1-166 of each and every allegation in this Complaint with the same force and effect as though fully set forth herein.

169. The Defendant Salem State and Mass. Board and each individually named Defendants negligently caused the Plaintiff to suffer from a neurological disorder including anxiety, hypertension as a proximate result of the severe emotional distress she was subjected to from her Supervisor, Defendant DelVecchio leading her to have a heart attack and be hospitalized until November 22, 2002. See <u>Exhibit "7."</u>

170. That all Defendants negligently failed to follow the duty to exercise ordinary care toward her as an employee in accordance with the written contractual rights under both the Employee Handbook, and the Agreement between the Association of Professional Administrators and the Defendant Mass. Board.

171. That all Defendants employed for Salem State, including, DelVecchio, Napora, and Harrington, negligently failed to follow written union rules

37

172. within collective bargaining agreement, and written Employee handbook, in failing to provide Plaintiff with notice and the opportunity to be heard before terminating her employment relationship.

173. That all Defendants including employees of the Defendant Mass. Board, negligently failed to investigate the validity of the Agreement between Mass Board, and Association of Professional Administrators and wrongfully allowed Defendant Fantini to be subjected to severe and pervasive emotional distress.

174. That as a direct and proximate result of the negligence of all Defendants, and each of them, the Plaintiff Fantini, was caused to suffer psychological injuries and harm and has incurred and will continue to incur in the future monetary loss, including but not limited to lost wages, loss of earning capacity, psychiatric counseling, lost pension benefits, lost health care coverage, lost retirement plan, lost flex time, and lost retirement benefits.

175. That the conduct of the Defendants was willful and wanton, and/or with such recklessness for the mental well being of Plaintiff, willful disregard for the employee rights and Union rights of Plaintiff, and willful disregard for rights and safety of Plaintiff, entitling Plaintiff to punitive damages for their outrageous conduct.

176. As a direct and proximate result of the conduct of the Defendants, and each of them, the Plaintiff, was caused to suffer mental anguish and mental suffering and ultimately being hospitalized until November 22, 2002, as well steady treatment with up to five physicians for numerous health problems, including both physical and psychological.

177. In doing the things herein alleged, the Defendants acted willfully, wantonly, and outrageously, and exceeded the bounds of human decency by, among other things, having forced the Plaintiff to suffer permanent mental injuries, leading to Plaintiff to be hospitalized until November 22, 2002.

## JURY TRIAL

THE PLAINTIFF REQUESTS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE IN THIS CASE.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

1. Compensatory damages totaling THREE MILLION DOLLARS, ($ 3,000,000);
2. Back pay, lost pension benefits, loss of health care plan;
3. reimbursement for hospital costs;
4. Attorneys fee, costs, interests,
5. Punitive Damages, and
6. other costs this Court deems just.

Sworn to under pains and penalties of perjury, by Plaintiff on this _22º_, day of November 2005.

_Marianne Fantini_
Marianne Fantini

PLAINTIFF
By her Attorney

_Robert J. Forrest_
Robert J. Forrest, Esquire
BB0 # 175080
345 Main Street
Haverhill, MASS. 01830
(978) 373-2225