# United States Court of Appeals
## For the First Circuit

No. 07-2026

MARIANNE J. FANTINI,

Plaintiff-Appellant,

v.

SALEM STATE COLLEGE, et al.,

Defendant-Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya Zobel, U.S. District Judge]

Before

Boudin and Dyk,* Circuit Judges,
and Dominguez,** District Judge.

Robert J. Forrest was on brief for appellant.
Martha Coakley, Attorney General of Massachusetts, with whom Anne Sterman, Assistant Attorney General, was on brief for appellees.

February 23, 2009

*Of the Federal Circuit, sitting by designation.

**Of the District of Puerto Rico, sitting by designation.

**Dominguez, District Judge.** Plaintiff/appellant, Marianne J. Fantini ("Fantini" / "Appellant"), appeals from the final order and judgment entered on May 28, 2007, of Honorable Judge Zobel, from the United States District Court for the District of Massachusetts. Appellant, a former female state employee of Salem State College, claims she was discriminated against because of her gender, and suffered unlawful retaliation, by her former employer, Salem State College. Appellant alleges that the district court abused its discretion in granting Defendants' motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6). Specifically, Appellant alleges that the district court abused its discretion 1) in dismissing the first count under gender discrimination and retaliation pursuant to Title VII (Count 1), 2) in finding that Appellant failed to plead facts enabling her to recover on a particular theory under 42 U.S.C. § 1983 (Counts 2 & 5), 3) in finding that Appellant failed to plead facts enabling her to recover on a particular theory under 42 U.S.C. § 1981 (Count 3), and 4) in finding that Appellant failed to exhaust administrative remedies under M.G.L. ch. 151B, §§§ 4, 4A and 5 (Count 6). We affirm in part and reverse and remand in part.

## I. BACKGROUND

This case was brought by Marianne J. Fantini, a former state employee of Salem State College, employed as the Director of Accounting from November 1999, through November 11, 2001. On April 3, 2000, after having worked as a temporary employee since November

1999, Appellant was hired by Salem State College to a full-time position as the Director of General Accounting, under the supervision of Matilda DelVecchio ("DelVecchio"). On November 11, 2001 Appellant involuntarily left work  because her Supervisor, defendant, DelVecchio allegedly created a hostile work environment which caused Appellant to suffer a nervous breakdown. Appellant alleges that said hostile environment arose after she had notified DelVecchio of certain problems and errors with the financial information that was being provided by Edward Manning ("Manning"), a male employee, which Appellant believed violated state regulations.  Appellant alleged that DelVecchio, rather than disciplining Manning, discriminated against her because of her gender and retaliated against her for her continuos complaints. Appellant further alleged that DelVecchio denigrated her abilities to perform her job and unfavorably compared her clothing to that of a male employee. DelVecchio's alleged continuous verbal attacks, led Appellant to have a mental breakdown on November 8, 2001.  One month after Fantini was out on leave under the Family and Medical Leave Act ("FMLA"), due to her nervous breakdown, defendant, Salem State College hired an independent accounting firm to audit the College's cash reconciliations and General Ledger account, which had been previously handled by Fantini.

As a consequence of the audit, Appellant was accused of unsatisfactory work performance, including calculating "incomplete

or incorrect" cash reconciliations, and accused of misconduct. Allegedly without being offered any type of opportunity to respond to these findings, on February 14, 2002, defendant, Salem State College terminated Appellant's employment.

After her termination, Fantini filed a grievance in April 2002 and later a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") on May 7, 2002. After receiving a "Right to Sue" letter from the EEOC, dated October 12, 2005, Fantini brought suit in the U.S. District Court for the District of Massachusetts on November 22, 2005, against (1) Salem State College, (2) Nancy D. Harrington, President of Salem State College, (3) Janyce J. Napora, V.P. of Administration and Finance, (4) Matilda DelVecchio, Supervisor of Treasury Services, (5) the Massachusetts Board of Higher Education's Office of Human Resources, (6) Stephen P. Tocco, Chairman of the Massachusetts Board of Higher Education, and (7) Peter Alcock, Jr., Salem State College's Representative of the Massachusetts Board of Higher Education, for gender discrimination and retaliation under both state and federal statutes. Nevertheless, on January 3, 2007 Appellant filed an Amended Complaint eliminating all defendants except Salem Sate College, Nancy Harrington, and Matilda DelVecchio, and withdrawing six of the original thirteen counts.

On March 26, 2007, the district court granted Defendants'

motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure, dismissing the remaining seven counts within Appellant's Amended Complaint. Judgment was entered on March 28, 2007. After the denial of several post-trial motions, Appellant filed its notice of appeal on June 26, 2007. Appellant specifically challenges the dismissal of counts one, two, three, five and six, that is five of the seven counts.

## II. ANALYSIS

### A. Standard of Review

We review *de novo* the district court's dismissal of a complaint under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. See Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In doing so, we must accept as true all well-pleaded facts "indulging all reasonable inferences in [Appellant's] favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). However, the Court shall not accept Appellant's "'bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' or 'subjective characterizations, optimistic predictions, or problematic suppositions.'" Gagliardi v. Sullivan, 513 F. 3d 301, 305 (1st Cir. 2008)(quoting Wash. Legal Found. v. Mass. Bar Found., 993 F. 3d 962, 971 (1st Cir. 1993); see also Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

We will affirm the dismissal of the complaint if, and only if, accepting all well-pleaded facts as a true and drawing all

reasonable inferences in favor of Appellant, the complaint "fails to state a claim upon which relief can be granted." Fed.R.Civ. P. 12(b)(6). In order to defeat a Fed.R.Civ.P. 12(b)(6) motion, a complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claims. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).

**B. Count One**

**1. Gender Discrimination and Exhaustion of Administrative Remedies under Title VII**

Although we agree with the district court's ruling that Appellant has adequately pled a general claim of gender discrimination under Title VII in order to survive a motion to dismiss, we disagree with the district court's ruling as to Fantini's failure to exhaust the required administrative remedies. The district court explained that although Plaintiff made one passing mention of gender discrimination in the last paragraph of the five page attachment of her MCAD complaint,

> [s]uch a barely articulated claim, which was not addressed by either party nor by the administrative agency, does not satisfy the exhaustion requirement. It defeats the whole purpose of the exhaustion requirement if plaintiff can raise an entirely new discrimination theory in court after testing, and losing on, a different theory in the administrative hearing.

R.A. 18.

Title VII requires an employee to file an administrative

- 6 -

charge as a prerequisite to commencing a civil action for employment discrimination. See 42 U.S.C. § 2000e-5(f). The purpose of that requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation. See <u>Powers</u> v. <u>Grinnell Corp.</u>, 915 F.2d 34, 37 (1st Cir.1990). Furthermore, "[t]he scope of the civil complaint is accordingly limited to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Id.; see also <u>Lattimore</u> v. <u>Polaroid Corp.</u>, 99 F.3d 456, 464 (1st Cir.1996); <u>Clockedile</u> v. <u>Clockedile v. New Hampshire Dept. of Corrections</u>, 245 F.3d 1, 4 (1st Cir. 2001). Moreover, it has been clearly established by this Circuit that

> [a]n administrative charge is not a blueprint for the litigation to follow. See <u>EEOC</u> v. <u>General Electric Co.</u>, 532 F.2d 359, 364 (4th Cir.1976) (quoting <u>EEOC</u> v. <u>Huttig Sash & Door Co.</u>, 511 F.2d 453, 455 (5th Cir.1975)) ("The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices.'"). See also <u>Graniteville Co.</u> v. <u>EEOC</u>, 438 F.2d 32, 38 (4th Cir.1971) (purpose of charge is to initiate EEOC investigation, "not to state sufficient facts to make out a prima facie case"); <u>Sanchez</u>, 431 F.2d at 465 ("[T]he purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC."). Thus, "the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial

- 7 -

> pleadings which may follow.'" <u>Tipler</u> v. <u>E.I.</u>
> <u>duPont deNemours & Co.</u>, 443 F.2d 125, 131 (6th
> Cir.1971) (quoting Sanchez, 431 F.2d at 466).
> Rather, the critical question is whether the
> claims set forth in the civil complaint come
> within the "scope of the EEOC investigation
> which can reasonably be expected to grow out
> of the charge of discrimination." <u>Sanchez</u>, 431
> F.2d at 466; <u>Babrocky</u>, 773 F.2d at 863;
> <u>Miller</u>, 755 F.2d at 23-24; <u>Less</u>, 705 F.Supp.
> at 112.

<u>Powers</u> v. <u>Grinnell Corp.</u>, 915 F. 2d 34, 38-39 (1st Cir. 1990).

Fantini's administrative charge states that "[a]nother male employee was accused of similar work problems but was not disciplined." Appellees' Brief, Addendum pg. 1.    Furthermore, Fantini describes in an attached statement to the administrative charge, a disparate treatment incident between her and a male employee, identified as Edward Manning, the Director of Financial Services:

> Other staff that report directly to the Vice-
> President made very significant errors that
> prevented the timely reconciliation of the
> general ledger.   For example, the Executive
> Director of Financial Services had been in his
> position approximately the same length of time
> I was therefore he did not retain seniority
> with regard to his position, **but he was not
> treated  as  I  was.     Although  we  were
> essentially in the same position in terms of
> job security, there had been major errors and
> omissions that he was responsible for, he had
> much more freedom to act to correct them than
> I had. I was terminated when I was out on sick
> leave despite the fact that there were major
> items to correct in his line of authority in
> order for the audit to be completed.**

Id., Addendum pg. 7 (emphasis added).

- 8 -

Fantini further states and alleges in her administrative charge that she "was terminated in an arbitrary and capricious manner while [she] was on sick leave **and [that she] believe[s] all of [it] was a pretext for gender discrimination....**" Id., pg. 7 (emphasis added).

After a perusal of the administrative charge filed by Fantini, we find that Fantini's charge sufficiently provided the Defendants with prompt notice of the claims against them, including the gender discrimination claims under Title VII, since Fantini specifically described an alleged incident of disparate treatment involving her and male employee, Edward Manning, as well as specifically stated that she believed her termination, while she was on sick leave, was a pretext for gender discrimination. See Grinnell Corp., 915 F.2d at 37.

Consistent with these allegations, Fantini's Amended Complaint includes the following averments:

> 22. Edward Manning's request to Fantini resulted in numerous reportable errors which were noted in the Massachusetts Fiscal Year 2001 Audit Report. These errors were acknowledged by defendant Salem College's Legal Counsel before M.C.A.D. ....
>
> 23. No action was ever taken to discipline Manning; (a male Director) instead Plaintiff Fantini was continuously singled out and disparately treated by defendant DelVecchio on account of Fantini's gender as a female....
>
> ...
>
> 74. On the basis of [] Fantini's gender the defendants discriminated against her by

- 9 -

> purposely failing to investigate the male employee Edward Manning based on allegations of misconduct reported by the plaintiff to her Supervisor DelVecchio. As a female in her middle fifties the plaintiff's reported grievances against male employee, Edward Manning, were not considered on the same equal footing as the defendants would have considered a male employees reporting misconduct of another male employee.

R.A. 68, 79-80.

Hence, we find that "the claims set forth in the civil complaint come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Powers, 915 F. 2d at 38-39 (quoting Sanchez v. Standard Brands, Inc.,, 431 F.2d 455, 466 (5ᵗʰ Cir. 1970)).

Consequently, the district court's dismissal of Appellant's gender discrimination claim under Title VII for failure to exhaust administrative remedies, against Salem State College is hereby vacated and remanded for further proceedings consistent with this opinion.[1]

## 2. No Individual Liability Under Title VII

The district court dismissed the Title VII claims against individual employee defendants, Matilda DelVecchio and Nancy D. Harrington after holding that an individual employee is not liable

---

[1]We of course, hint no determination as to the potential outcome related to Plaintiff/Appellant passing muster under summary judgment standard if necessary and/or as to the merits of the alleged disparate treatment gender claim.

under Title VII.  Although this Circuit Court has declined in the
past to decide whether an individual employee may be found liable
under Title VII, we shall take this opportunity to "'enter th[e]
thicket' of determining" this issue. Rivera v. Puerto Rico Aqueduct
and Sewer Authority, 331 F. 3d 183, 191 n.4 (1st Cir. 2003)(quoting
Serapion v. Martinez, 119 F. 3d 982, 992 (1st Cir. 1997).

Title VII defines "employer", in relevant part, as "a person
engaged in an industry affecting commerce who has fifteen or more
employees ... and any agent of such a person." 42 U.S.C. §
2000e(b).  Since the issue arises when a suit is filed against the
employer's employees in their individual capacities, we therefore
must analyze and determine whether the employees may be held liable
as "agents" of the employing entity.  In other words, we must
determine whether Title VII by including in the definition of
employer, "any agent of such a person", intended for said "agents"
to be subject to liability for engaging in the proscribed
discriminatory acts. 42 U.S.C. § 2000e-2.

Most circuit courts have held that no personal liability can
be attached to agents under Title VII. See Busby v. City of
Orlando, 931 F.2d 764, 772 (11th Cir. 1991)("Individual capacity
suits under Title VII are ....inappropriate. The relief granted
under Title VII is against the employer, not individual employees
whose actions would constitute a violation of the Act."); see also
Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007); Williams

v. Banning, 72 F.3d 552, 555 (7th 1995)("Because a supervisor does
not, in his individual capacity, fall within Title VII's definition
of employer, [Appellant] can state no set of facts which would
enable her to recover under the statute.").

Specifically, in Miller v. Maxwell's Intern. Inc., 991 F.2d
583, 587 (9th Cir. 1993), cert. denied, 510 U.S. 1109, 114 S.Ct.
1049, 127 L.Ed.2d 372 (1994), the Ninth Circuit held that Title
VII's

> ...statutory scheme itself indicates that
> Congress did not intend to impose individual
> liability on employees. Title VII limits
> liability to employers with fifteen or more
> employees, 42 U.S.C. § 2000e(b), ..., in part
> because Congress did not want to burden small
> entities with the costs associated with
> litigating discrimination claims. If Congress
> decided to protect small entities with limited
> resources from liability, it is inconceivable
> that Congress intended to allow civil
> liability to run against individual employees.

A few years later in Sheridan v. E.I. DuPont de Nemours and
Co., 100 F. 3d 1061, 1077-1078 (3rd Cir. 1996), the Third Circuit
found

> ...most significant the fact that when
> Congress amended the statute in 1991 to
> provide a detailed sliding scale of damages
> ranging from $50,000 for an employer of more
> than 14 and fewer than 101 employees, to
> $300,000 for employers with more than 500
> employees, 42 U.S.C. § 1981a(b)(3), it made no
> reference as to the amount of damages, if any,
> that would be payable by individuals. This
> strongly suggests that Congress did not
> contemplate that such damages would be
> assessed against individuals who are not
> themselves the employing entity.

(citing Tomka v. Seiler Corp., 66 F.3d 1295, 1315 (2nd Cir.1995) and Maxwell's Int'l Inc., 991 F.2d at 587 n. 2. The Court further "noted that Congress had previously expressed its concern about the impact of Title VII litigation on small businesses when it excluded businesses with fewer than fifteen employees from the definition of an 'employer.' It is reasonable to infer that Congress's concern in that regard applies as well to individuals." E.I. DuPont de Nemours and Co., 100 F. 3d at 1077-1078; see also Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1079 (8th Cir. 2006)("Title VII addresses the conduct of employers only and does not impose liability on co-workers...."); Lissau v. Southern Food Service, Inc., 159 F.3d 177, 180 (4th Cir. 1998)

> (The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer. Title VII defines employer to include certain persons who employ fifteen or more workers and, like the ADEA, "any agent of such a person." Compare 42 U.S.C. § 2000e(b), with 29 U.S.C. § 630(b); see also Wathen v. General Elec. Co., 115 F.3d 400, 404 n. 6 (6th Cir.1997) (noting that Title VII and ADEA "define 'employer' essentially the same way"); EEOC v. AIC Sec. Investig., Ltd., 55 F.3d 1276, 1280 n. 1 (7th Cir.1995) (noting that the two definitions are "essentially identical"). We already have observed that Title VII is the ADEA's "closest statutory kin." Birkbeck, 30 F.3d at 510 (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a

person who supervises an identical number of
employees in a larger company. See id. We
interpret the inclusion of agent in Title
VII's definition of employer simply to
establish a limit on an employer's liability
for its employees' actions. See Birkbeck, 30
F.3d at 510-11; Miller v. Maxwell's Int'l.
Inc., 991 F.2d 583, 587 (9th Cir.1993))

Smith v. Amedisys, Inc., 298 F. 3d 434, 448-449 (5th Cir. 2002)

(Under Title VII, an "employer" includes any
"person engaged in an industry affecting
commerce ... and any agent of such a person."
42 U.S.C. § 2000e(b). This circuit has held
that there is no individual liability for
employees under Title VII. See Indest v.
Freeman Decorating, Inc., 164 F.3d 258, 262
(5th Cir.1999); Grant v. Lone Star Co., 21 F.3d
649, 652 (5th Cir.1994). While Title VII's
definition of the term employer includes "any
agent" of an employer, Congress's purpose was
merely to import respondeat superior liability
into Title VII. See Indest, 164 F.3d 258 at
262; Grant, 21 F.3d 649 at 652 (citing Miller
v. Maxwell's Int'l, Inc., 991 F.2d 583, 587
(9th Cir.1993)))

See also Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir.

1997)("We now hold that an individual employee/supervisor, who does

not otherwise qualify as an 'employer,' may not be held personally

liable under Title VII."); Haynes v. Williams, 88 F.3d 898, 901

(10th Cir. 1996)

(Accordingly, we continue to adhere to this
court's established, pre-amendment rule that
personal capacity suits against individual
supervisors are inappropriate under Title VII.
Sauers, 1 F.3d at 1125. "[T]he employment
discrimination statutes have broad remedial
purposes and should be interpreted liberally,
but that cannot trump the narrow, focused
conclusion we draw from the structure and
logic of the statutes." AIC Sec.

- 14 -

> Investigations, Ltd., 55 F.3d at 1282.
> "Congress has struck a balance between
> deterrence and societal cost, and we will not
> upset that balance." Id.)

After reviewing the analysis fashioned by all of our sister

circuits, we are persuaded by their analysis and therefore take this

opportunity to determine as they have that there is no individual

employee liability under Title VII.

As held by our sister circuits we find that "[t]he statutory

scheme [of Title VII] itself indicates that Congress did not intend

to impose individual liability on employees." Miller, 991 F.2d at

587. If Congress did not intend to protect small entities from the

costs associated with litigating discrimination claims, it would not

have limited liability to employers with fifteen or more employees.

See 42 U.S.C. § 2000e(b). Furthermore, we join the Seventh Circuit

in its analysis and holding regarding the 1991 amendments to Title

VII:

> [t]he 1991 amendments to Title VII further
> bolster our conclusion that individuals are
> not liable under that Act. Prior to 1991,
> remedies under Title VII were ordinarily
> limited to back pay and equitable relief such
> as reinstatement that "typically are only
> obtainable from an employing entity, not from
> a mere individual." AIC, 55 F.3d at 1281
> (citation omitted); see also Tomka v. Seiler
> Corp., 66 F.3d 1295, 1314 (2nd Cir.1995). In
> 1991, Congress added compensatory and punitive
> damages to the list of available remedies. See
> Civil Rights Act of 1991, § 102, Pub.L. No.
> 102-166, 105 Stat. 1071, 1072-73 (codified at
> 42 U.S.C. § 1981a) (CRA). In the CRA's
> findings, Congress noted that "additional
> remedies under Federal law are needed to deter

unlawful harassment and intentional
discrimination in the workplace." Id. § 2, 105
Stat. at 1071. Congress tied the amount of
available compensatory and punitive relief to
the size of the employer. Id. § 102(b)(3), 105
Stat. at 1073 (codified at 42 U.S.C. §
1981a(b)(3)). For example, companies that
employ 200 workers are liable to each
complainant for a maximum of $100,000 in
compensatory and punitive damages while
companies employing 100 workers are liable for
a maximum of $50,000. Id. § 102(b)(3)(A)-(B),
105 Stat. at 1073 (codified at 42 U.S.C. §
1981a(b)(3)(A)-(B)). This sliding scale of
liability does not stipulate an amount in
cases where a plaintiff seeks to hold an
individual supervisor liable.

These amendments to the remedial scheme thus
suggest that Congress only intended employers
to be liable for Title VII violations. Nowhere
does the CRA mention individual liability as
an available remedy. Had Congress felt that
individual liability was "needed to deter
unlawful harassment and intentional
discrimination," surely it would have included
this remedy in the 1991 Amendments. See
Wathen, 115 F.3d at 406; Tomka, 66 F.3d at
1315; Miller, 991 F.2d at 588 n. 2. Instead,
the linkage between the size of the employer
and the amount of available relief clearly
indicates a congressional intent to limit
plaintiffs' remedies to suits against
employers. To permit individual liability
would improperly expand the remedial scheme
crafted by Congress.

Lissau, 159 F.3d at 180-181.

Therefore, "it is inconceivable that Congress intended to allow
civil liabilities to run against individual employees." Miller, 991
F. 2d at 587. For said reason, we find that "Title VII addresses
the conduct of employers only and does not impose liability on
co-workers...." Powell v. Yellow Book U.S.A., Inc., 445 F. 3d 1074,

1079 (8th Cir. 2006)(citing Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir.1994)).

Consequently, we find that there is no individual employee liability under Title VII. Hence, we affirm the district court's dismissal of the Title VII claims against individual employee defendants, Matilda DelVecchio and Nancy D. Harrington.

## 3. Retaliation Under Title VII

We agree with the district court's dismissal of Appellant's retaliation claim under Title VII.

Title VII, 42 U.S.C. § 2000e-3, specifically states that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ...because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

"In order to make out a prima facie case of retaliation, ...[Appellant has] to prove that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002)(citing Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir.1998)). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title

VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Long v. Eastfield College, 88 F.3d 300, 304 (5ᵗʰ Cir. 1996)(quoting 42 U.S.C. § 2000e-3(a)). "To establish the first of these elements-participation in a protected activity- [Appellant] need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII." Wimmer v. Suffolk County Police Dep't, 176 F. 3d 125, 134 (2ⁿᵈ Cir. 1999), cert. denied, 528 U.S. 964, 120 S. Ct. 398, 145 L.Ed.2d 310 (1999)(quoting Manoharan, M.D., v. Columbia University College of Physicians & Surgeons, 842 F. 2d 590, 594 (2ⁿᵈ Cir. 1988). Appellant "must demonstrate only that [she] had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" Id. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores Inc., 202 F. 3d 560, 566 (2ⁿᵈ Cir. 2000)(citing 42 U.S.C. § 2000e-3 and Wimmer, 176 F. 3d at 134-135); see also Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2ⁿᵈ Cir. 1990)

> (In addition to protecting the filing of formal charges of discrimination, § 704(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.)

In the instant case Fantini did not comply with the first

requirement by failing to show that she engaged in a protected activity within the meaning of the statute, since the "misconduct of male, Edward Manning under the ("Conflict of Interest Law and Financial Disclosure Law")...; for changing the general ledger system contrary to law", is not an unlawful employment practice under Title VII. R.A. 79-80; see also Wimmer, 176 F. 3d at 135 ("In the absence of such evidence, [Appellant's] claim of retaliation is not cognizable under Title VII because [her] opposition was not directed at an unlawful *employment practice* of [her] employer."). In other words, Appellant's complaints to her supervisor "either pointed out discrimination against particular individuals nor discriminatory practices by" Defendants. Manoharan, M.D., 842 F. 2d at 594. Consequently, Fantini could not have had a "'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" Wimmer, 176 F. 3d at 134.

For said reasons, we affirm the district court's dismissal of Appellant's retaliation claim under Title VII.

## C.  Count Two

We agree with the district court's dismissal of Appellant's 42 U.S.C. § 1983 claim against defendants Harrington and DelVecchio in their individual capacities.  In Fantini's Amended Complaint she specifically alleges that

> [e]ach of the individual Defendant's [sic],
> separately and in concert, while acting under
> color of law or contrary  to state law;
> deprived [her] of the rights, privileges and

- 19 -

> immunities secured to her by the Fourteenth
> Amendments [sic] to the United States
> Constitution. The specific state law that
> defendant violated is the Conflict of Interest
> Law.

R.A. 80 (citing M.G.L. c. 268 and Exhibit "3.") Although, "'[a]
person may recover damages [under §1983] from a state or local
official who, while acting under color of state law, commits a
constitutional tort,'" R.A. 18 (quoting Wilson v. Town of Mendon,
294 F. 3d 1, 6 (1ˢᵗ Cir. 2002)), Fantini "identifies no legal basis
for claiming that a violation by defendants of [the Massachusetts
Conflict of Interest Law, Mass. Gen. L. ch. 268] violates her rights
under the 'Fourteenth Amendment to the United States Constitution.'"
R.A. 18-19 (quoting Amended Complaint, ¶79).

Moreover, we find that even if Appellant intended to include
Salem State College under Count Two, said claim is barred by the
Eleventh Amendment.

> ...[I]t is well settled "that neither a state
> agency nor a state official acting in his
> official capacity may be sued for damages in a
> section 1983 action," Johnson v. Rodriguez,
> 943 F.2d 104, 108 (1ˢᵗ Cir.1991) (citing Will
> v. Michigan Dep't of State Police, 491 U.S.
> 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45
> (1989)), cert. denied, 502 U.S. 1063, 112
> S.Ct. 948, 117 L.Ed.2d 117 (1992); see also
> Kaimowitz v. Board of Trustees, Univ. of Ill.,
> 951 F.2d 765, 767 (7ᵗʰ Cir.1991) (finding that,
> as neither the state nor its "alter ego"
> (state university) is a "person" for section
> 1983 purposes, neither is subject to suit
> under section 1983)...

Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698,

700 (1st Cir. 1995).

Therefore, we affirm the district court's dismissal of Count Two.

## D.  Count Three

We further agree with the district court's dismissal of Appellant's 42 U.S.C. § 1981, since Fantini failed to allege that she was discriminated because of her race.  Although Appellant contends that the U.S. Supreme Court in <u>Domino's Pizza Inc.,</u> v. <u>McDonald</u>, 546 U.S. 470, 126 S. Ct. 1246 (2006), has reinterpreted the federal statute, 42 U.S.C. § 1981(a), by allegedly holding that race is no longer required to make out a claim under § 1981, we disagree.

In <u>Domino's Pizza Inc.</u>, the U.S. Supreme Court specifically stated the following:

> Among the many statutes that combat **racial discrimination**, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a).
> . . .
> We made this clear in <u>Runyon</u> v. <u>McCrary</u>, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which subjected defendants to liability under § 1981 when, for **racially motivated reasons**, they prevented individuals who "*sought to enter* into contractual relationships" from doing so, id., at 172, 96 S.Ct. 2586 (emphasis added). We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination

- 21 -

> blocks the creation of a contractual
> relationship, as well as when racial
> discrimination impairs an existing contractual
> relationship, so long as the plaintiff has or
> would have rights under the existing or
> proposed contractual relationship.

546 U.S. at 474-476, 126 S. Ct. 1246 (first and second emphasis added). Although we deem the Supreme Court's holding to be pellucid, we shall briefly explain the wording that has caused Appellant some confusion.

The Supreme Court, when stating that § 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' **without respect to race**", meant that all persons have the equal right to make and enforce contracts without their race being a decisive factor. Domino's Pizza, Inc., 546 U.S. at 474 (emphasis added). In other words, in Domino's Pizza Inc., the Supreme Court in no way reinterpreted the statute. On the contrary the Supreme Court reiterated its holding that "[s]ection 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship...." Id.

Therefore, we affirm the district court's dismissal of Count Three.

## E. Count Five

We agree with the district court's dismissal of Appellant's 42 U.S.C. § 1983 (Due Process Claim), though we reach this conclusion

- 22 -

based on Appellant's failure to state a claim rather than on
qualified immunity grounds.[2]

The allegations of the complaint are more or less as follows:

> The defendants failed to provide the plaintiff
> with a pre-termination hearing prior to
> terminating her employment while she was out
> on FMLA; defendants were required to provide
> defendant with some notice and an opportunity
> to be heard prior to termination of
> employment.... The plaintiff can satisfy the
> prima facie case elements under 42 U.S.C. §
> 1983 because (1.) the defendants acted under
> state law and contrary to the state laws
> governing defendant Salem State College in
> firing plaintiff, and depriving her of pre-
> termination hearing and (2.) the action of
> firing plaintiff while she was out on federal
> FMLA leave; is a deprivation of constitutional
> or federal statutory right.

In Appellant's brief (Pages 34-35), Fantini alleges the
following:

> Plaintiff does not dispute defendant's
> possessed the right to terminate her or any
> other at-will employee without notice and the
> opportunity to be heard under the language of
> the collective bargaining agreement. What
> Plaintiff does dispute, however, is the
> court's exclusion of the material facts and
> circumstances related to this specific
> plaintiff, who was protected from termination

---

[2]Nevertheless, we agree with the district court's dismissal of
Appellant's damages claim under § 1983, against defendants, Salem
State College, Harrington and DelVecchio in their official
capacities, since "'[i]t is well settled beyond peradventure ...
that neither a state agency nor a state official acting in his
official capacity may be sued for damages in a § 1983 action.'"
Destek Group, Inc. v. State of New Hampshire Public, 318 F.3d 32,
40 (1st Cir. 2003)(quoting Johnson v. Rodriguez, 943 F.2d 104, 108
(1st Cir. 1991)); see also  Mass. Gen. Laws ch. 73, §§ 16 & 19.

- 23 -

> of her employment while out on leave under
> Family Medical Leave Act, 29 U.S.C. §2601, et
> seq (FMLA).
>
> Generally speaking, defendants may terminate
> an employee-at-will without cause under
> plaintiff's collective bargaining agreement.
> However, in the instant case, terminating this
> plaintiff only after she took a leave of
> absence, (for reasons that were never in issue
> prior to taking leave); without affording
> plaintiff any hearing violated the Family and
> Medical Leave Act ("FMLA"), 29 U.S.C. § 2601,
> et seq.

From the aforementioned statement, it is clear that Appellant

seeks to enforce her rights under the Family and Medical Leave Act

through 42 U.S.C. § 1983. The issue of whether the rights conveyed

under the FMLA may be enforced through Section 1983 is an issue of

first impression in this Circuit and one we need not decide here.

We are disinclined to resolve this issue unless absolutely necessary

because of a recent Supreme Court decision that came down after this

case was briefed. See Fitzgerald v. Barnstable School Comm., ___

S. Ct. ___, 2009 WL 128173 (U.S.).

The relevance of Fitzgerald has not been briefed, and we think

a clearer reason for sustaining the lower court exists based on

Fantini's failure to make out an FMLA claim at all. Independent of

whether an FMLA violation could be enforced through § 1983, no FMLA

violation elaborated has been properly alleged in this case.

It is true that if an employee is fired for taking FMLA -

provided leave, relief is available. See Bryant v. Dollar Gen.

Corp., 538 F. 3d 394 (6th Cir. 2008). There is no protection,

- 24 -

however, for an employee who is fired for appropriate cause but also happens to be on leave. See 29 C.F.R. § 825.216. The question of who shoulders the burden of proof is one that has divided the circuits. See Smith v. Diffee Ford-Lincoln- Mercury, Inc., 298 F. 3d 955, 963 (10th Cir. 2002). But here Fantini alleges only that she was entitled to a hearing under the FMLA before she could be terminated. The FMLA provides no such right, and for this reason appellant fails to state a claim.

In her complaint, Fantini also advanced a constitutional claim based on due process, citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487 (1985) for the proposition that she has a due process right to a pre-termination hearing. Fantini's brief on appeal does not pursue this theory because Fantini concedes that Salem State "possessed the right to terminate her or any other at-will employee without notice and the opportunity to be heard." Appellant's Br., 34-35.

For these reasons, we affirm the district court's dismissal of Court Five but for the alternate reasons stated herein.

**F.   Count Six**

We agree with the district court's dismissal of Appellant's retaliation claim under M.G.L. ch. 151B against all the Defendants, although for different reasons.

Similar to Title VII, in order to establish a prima facie case of retaliation under Massachusetts anti-discrimination statute,

Appellant "must show that (1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse job action." Thompson v. Coca-Cola Co., 522 F.3d 168, 181 (1st Cir. 2008); see also Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005).

> Title VII forbids any "employer to discriminate against any of his employees ... [or any] labor organization to discriminate against any member thereof ... because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Under the Massachusetts employment discrimination statute, no "person, employer, [or] labor organization" may "discharge, expel or otherwise discriminate against any person ... because [she] has filed a complaint, testified or assisted in any proceeding" covered by the statute. Mass. Gen. Laws ch. 151B, § 4(4).

Dixon v. International Broth. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007).

Pursuant to Mass. Gen. Laws ch. 151B, § 4(4), Appellant engages in a protected activity "if she has opposed any practices forbidden under this chapter or ... has filed a complaint, testified or assisted in any proceeding under [Mass. Gen. Laws ch. 151B, § 5]." See also Id, at 82 n.5 ("There is no dispute that [Plaintiff] engaged in a protected activity by pursuing her sexual harassment claims."); Noviello, 398 F.3d at 88 ("Here, there is no dispute that the plaintiff engaged in protected activity by filing

- 26 -

a complaint."); Douglas v. J.C. Penney Co., Inc., 422 F.Supp.2d 260, 279(D.Mass. 2006)("By complaining...about perceived racial discrimination with regards to her comments and the Barbie incident, Plaintiff engaged in protected activity.").

Again we find that Fantini did not comply with the first prong by failing to show that she engaged in a protected activity, since the "misconduct of male, Edward Manning under the ("Conflict of Interest Law and Financial Disclosure Law")...; for changing the general ledger system contrary to law," does not constitute a forbidden practice under the Massachusetts anti-discrimination statute, M.G.L.A. ch. 151B § 4.

Consequently, we agree with the district court's dismissal of Count Six.

### III. CONCLUSION

For the reasons stated herein we affirm in part and reverse and remand in part for further proceedings consistent with this opinion. Each side shall bear their own costs.